**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOURTHERN DIVISION**

| | |
|---|---|
| **PAUL MICHELOTTI,** | Case No. 2:14-CV-14441 |
| Plaintiff, | |
| v. | District Judge: Hon. Sean F. Cox |
| **ROBERT BOSCH, LLC,** | |
| Defendant. | |

**ORDER (1) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY DUE TO INDEFITENESS UNDER 35 U.S.C. § 112 (Dkt. 29): (2) DENYING PLAINTIFF'S MOTION TO STAY (Dkt. 28); AND (3) DENYING PLAINTIFF'S MOTION TO STRIKE COUNTER CLAIMANT'S RESPONSIVE BRIEF (Dkt. 35)**

### I.  INTRODUCTION

This is a patent infringement case in which pro se Plaintiff Paul Michelotti ("Plaintiff") alleges that Defendant Robert Bosch, LLC ("Defendant") has engaged in development, testing, and manufacture of automobile systems that infringes U.S. Patent No. 6,023,221 ('221 Patent). Before the Court is Defendant's Motion for Summary Judgment of Invalidity Due to Indefiniteness under 35 U.S.C. §112 ¶ 2.  (Dkt. 29.)  In this summary judgment motion, Defendant argues that the '221 is invalid for indefiniteness because it does not disclose corresponding algorithms in the written description section of the patent for functions set forth in independent Claim 1.

Also before the Court are Plaintiff's Motion to Stay Infringement Proceeding Pending Resolution of Counterclaims (Dkt. 28) and Plaintiff's Motion to Strike Claimant's Responsive Brief Filed with the Court (Dkt. 35).

1

The Court finds that the issues have been adequately presented in the parties briefs and that oral argument would not significantly aid the decisional process. E.D. Mich. L.R. 7.1(f)(2). The Court therefore orders that the motion will be decided upon the briefs.

For the reasons set forth below, the Court **DENIES** Defendant's motion for summary judgment. The Court **DENIES** as moot Plaintiff's Motion to Stay Infringement Proceeding Pending Resolution of Counterclaims and Plaintiff's Motion to Strike Claimant's Responsive Brief Filed with the Court. The parties are to work with the Court's Technical Adviser Christopher G. Darrow to propose a schedule for the remaining part of this case.

## II. FACTS AND PROCEDURAL BACKGROUND

Plaintiff is the named inventor and owner of U.S. Patent 6,023,221 ('221 Patent) which discloses an automotive safety system that automatically activates an automobile's blinking hazard warning lights when the vehicle decelerates quickly such as in a hard braking situation. Abstract, '221 Patent. The hazard warning lights are also activated independently of the brakes so that even in an accident situation, where the driver does not press the brake pedal but the automobile collides with another object and decelerates quickly, the blinking hazard lights will be activated.

The "Background of the Invention" section of the patent explains why the invention is useful. The invention is designed to prevent rear end automobile collisions. A second vehicle following behind another lead vehicle cannot typically tell how quickly the lead vehicle is decelerating. Where the lead vehicle decelerates quickly, a car following the lead vehicle may not appreciate how quickly the lead automobile has decelerated and collide into the rear end of the lead vehicle. The invention disclosed in the '221 Patent solves this problem by having a system in the lead vehicle that will detect when the vehicle is decelerating quickly and, if so, turn on the blinking hazard lights. By turning on the hazard lights in the lead vehicle, a driver in an

automobile following the lead vehicle will know that the lead vehicle is decelerating rapidly. '221 Pat. col. 1:17-22. The '221 Patent states: "An automatic activation system, by providing the earliest possible indication of heavy braking or collision, would great diminish the frequency and severity of such events." *Id*. at col. 1:39-41.

      The Abstract of the patent describes the invention:

> An automotive safety system that will automatically activate hazard warning lights under circumstances of hard braking or sudden stoppage. The system incorporates an accelerometer which measures the longitudinal acceleration of the vehicle and a microcontroller which processes the acceleration readings. When a series of deceleration values in excess of a predetermined threshold is detected, the microcontroller transmits an activation signal and the hazard warning lights are activated to warn other motorists. The hazard lights, when activated, remain active until they are either manually reset by the vehicle operator or automatically reset by the microcontroller when it detects a series of positive acceleration values consistent with normal vehicle operation. The hazard warning lights of this system are activated independently of the brake lights such that, in an accident situation, the hazard lights will activate even if the vehicle operator has not pressed the brake pedal.

*Id*.

      The '221 Patent includes one figure, which is reproduced below:



The lone figure included in the '221 Patent shows a schematic diagram of the vehicle lighting control system. The vehicle lighting control system includes a digital accelerometer 20 and a microcontroller 22. The digital accelerometer 20 includes a sensing element with machined microstructures that respond to changes in acceleration with changes in capacitance. *Id.* at col. 3:13-16. The digital accelerometer 20 converts the changes in capacitance due to acceleration to a digital pulse output. The '221 Patent includes an exemplary digital acceleration unit, which is Model 1010 sold by Silicon Designs, Inc. *Id.* at col. 3:18-20.

The microcontroller 22 generates a clock signal, which is transmitted to the digital accelerometer 20. The number of pulses generated by the digital accelerometer 20 per clock cycle indicates the amount of acceleration and the direction of acceleration (e.g., acceleration or deceleration). *Id.* at col. 3: 22-26. The microcontroller 22 compares the amount and direction of acceleration to a threshold. The microcontroller 22 transmits an "on" signal to a latching relay 18 when the microcontroller 22 recognizes a pulse count indicative of rapid deceleration

resulting from hard or prolonged braking or sudden stoppage.  Specific thresholds of deceleration and activation are predetermined.  *Id.* at col. 3:32-37.

When the latching relay 18 receives the "on" signal from the microcontroller 22 (indicating rapid deceleration), the latching relay 18 closes, and the vehicle electrical system voltage is supplied to the turn signal/hazard warning relay 24, which activates the vehicle's hazard lights.  *Id.* at col. 3:46-48.  The latching relay 18, and therefore the signal/hazard warning relay 24, remain closed until the latching relay 18 receives a subsequent "off" signal from either the microcontroller 22, or the driver actuating a pushbutton switch.  *Id.* at col. 3:43-45.  The microcontroller 22 sends an "off" signal to the latching relay 18 when the pulse count received from the digital accelerometer 20 indicates normal positive acceleration.  *Id.* at col. 3:37-40.

The '221 Patent has only one independent claim, Claim 1.  Claim 1 of the '221 Patent states:

1. In a motor vehicle having hazard warning lights and a manual control switch, an improvement consisting of electronic circuitry which causes the hazard warning lights to automatically activate under circumstances of rapid decelearation [*sic*] and to remain activated until manaually [*sic*] reset by the vehicle operator or automatically reset by electronic recognition of a resumption of normal vehicle operation, said electronic circuitry comprising:

   sensing means to detect acceleration and deceleration of the vehicle;

   said sensing means including means to produce a signal indicating the rate of acceleration or deceleration of the vehicle;

   means to determine when the rate of deceleration exceeds a predetermined threshold level for a predetermined time interval;

   means to automatically activate the hazard warning lights when said rate of deceleration exceeds said predetermined threshold level for said predetermined time interval;

   means to maintain hazard warning light activity beyond the incident of deceleration which causes activation;

      means to automatically deactivate the hazard warning lights when the rate of deceleration drops below the predetermined threshold level for a predetermined length of time and changes in acceleration of the vehicle indicate normal vehicle operation; and

      whereby the hazard lights are automatically activated to provide a warning that a rapid deceleration of the vehicle is occurring or has taken place and automatically deactivate when normal operation of the vehicle is resumed.

'221 Pat. col. 4:ll. 16-48.

Plaintiff filed this case on November 19, 2014, alleging that Defendant infringed Claim 1 of the '221 Patent. (Compl., Dkt. 1.) Plaintiff filed an Amended Complaint on March 30, 2015. (Dkt. 10.) Defendant denied infringing Claim 1, and raised affirmative defenses and counterclaims including invalidity. (Answer, Dkts. 8 and 11.)

Following an unsuccessful mediation, Defendant filed the present motion for summary judgment arguing that the '221 patent is invalid for indefiniteness because the written description section of the patent does not disclose algorithms for functions set forth in Claim 1, the only independent claim. (S.J. mot., Dkt. 29.)

Plaintiff also filed a motion to stay this case pending resolution of the motion for summary judgment presently before the Court (Dkt. 28) and a motion to strike Defendant's reply brief in support of its summary judgment motion (Dkt. 35) because Defendant's reply brief allegedly introduces new arguments not raised in Defendant's principal brief.

### III. STANDARD FOR SUMMARY JUDGMENT

Plaintiff is representing himself. In this Circuit, pleadings drafted by *pro se* litigants are held to less stringent standards than those drafted by lawyers. *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) (citing *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972) ("We cannot say with assurance that under the allegations of the *pro se* complaint, which we hold to less stringent

standards than formal pleadings drafted by lawyers, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (internal citations omitted)). As such, the Court acknowledges Plaintiff is a *pro se* litigant, and extends him the courtesy of the less stringent standards for pleadings awarded to *pro se* litigants in this Circuit.

To succeed on their Motion for Summary Judgment, Defendant must show that "there is no genuine issue as to any material fact and that [the defendant] is entitled to judgment as a matter of law". *Celotex v. Catrett,* 477 U.S. 317, 322 (1986). Patents are presumed valid, and a party challenging validity has the burden of establishing invalidity by clear and convincing evidence. 35 U.S.C. § 282(a); *Microsoft Corp. v. i4i Ltd. P'Ship,* 131 S. Ct. 2238 (U.S. 2011). Since the Defendant must prove invalidity by clear and convincing evidence, "the plaintiff, to survive the defendant's motion, need only present evidence from which a [a fact-finder] might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### IV.  ANALYSIS

In its motion for summary judgment, Defendant argues that the only independent claim of the '221 Patent, Claim 1, contains computer implemented means-plus-function claim limitations pursuant to 35 U.S.C. § 112 ¶ 6 (now 35 U.S.C. § 112(f)), [1] but the specification of the '221 Patent does not disclose algorithms in the specification for the recited functions as required by Federal Circuit case law. According to Defendant, because the '221 Patent does not contain

---

[1] "Paragraph 2 and Paragraph 6 of 35 U.S.C. § 112 were replaced by § 112(b) and § 112(f) respectively when the Leahy-Smith America Invents Act ("AIA") . . . took effect on September 16, 2012. Because the application resulting in the asserted patent was filed before that date, [the Court] refer[s] to the pre-AIA version of § 112." *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1371 n.1 (Fed. Cir. 2015). There are no substantive differences between the pre-AIA and post-AIA statutory provisions.

algorithms for the functions set forth in means-plus-function claim limitations, the '221 Patent is invalid for being indefinite under 35 U.S.C. § 112 ¶ 2 (now 35 U.S.C. § 112(b)).

A patent must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as [the] invention." 35 U.S.C. § 112 ¶ 2 (pre-AIA). If a claim fails to meet this standard, the claim is invalid. "A claim fails to satisfy this requirement and is thus invalid for indefiniteness if its language, when read in light of the specification and the prosecution history, 'fails to inform with reasonable certainty, those skilled in the art about the scope of the invention.'" *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1371 (Fed. Cir. 2015) (quoting *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014)). "[A] claim is indefinite if its language might 'mean several different things and no informed and confident choice is available among the contending definitions.'" *Id.*

The parties stipulate that Claim 1 includes means-plus-function claim limitations. (Pl.'s resp. br. at 12, Dkt. 33.) Similar to the deed to a piece of real property, a claim of a patent sets forth the boundary lines of the invention covered by the patent. A patent claim directed to an apparatus normally sets forth specific structure to define the invention. This specific structure defines the metes and bounds of the invention covered by the patent. In contrast, a means-plus-function claim limitation is a special type of claim limitation that allows a patent owner to set forth a function to be performed without setting forth the specific structure to accomplish the function. Means-plus-function claim limitations are provided for in 35 U.S.C. § 112 ¶ 6 (pre-AIA), which states:

> "**Element in Claim for a Combination. –** An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

Means-plus-function claim limitations were provided for by Congress in 35 U.S.C. § 112 ¶ 6 "to overturn several Supreme Court rulings rejecting 'functional' claiming." *Williamson*, 792 F.3d at 1360 (Newman, J., dissenting). "In enacting this provision, Congress struck a balance in allowing patentees to express a claim limitation by reciting a function to be performed rather than by reciting structure to perform that function, while placing specific constraints on how such a limitation is to be construed, namely, by restricting the scope of coverage to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." *Id*. at 1347 (en banc).

"Means-plus-function claim limitations . . . must satisfy the definiteness requirements of § 112[(b)]." *EON Corp. IP Holdings, LLC v. AT&T Mobility LLC*, 785 F.3d 616, 621 (Fed. Cir. 2015). Determining whether a means-plus-function claim is definite arises as part of the claim construction process. *Atmel Corp. v. Info Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed. Cir. 1999). In construing a means-plus-function claim limitation, the Court, not a jury, must "attempt to construe the disputed claim term by identifying the 'corresponding structure, material, or acts described in the specification' to which the claim term will be limited." *Media Rights*, 800 F.3d at 1374 (citations and quotations omitted). If the court is unable to identify corresponding structure, material, or acts described in the specification for performing the functions set forth in the claim limitation, the claim limitation is indefinite and thereby invalid. *Id*. Structure disclosed in the specification qualifies as "corresponding structure, material, or acts" if the intrinsic evidence clearly links or associates that structure to the function recited in the claim." *Williamson*, 792 F.3d at 1352. "Even if the specification discloses corresponding structure, the disclosure must be of 'adequate' corresponding structure to achieve the claimed function." *Id*. Therefore, pursuant to 35 U.S.C. § 112 ¶ 2 and ¶ 6, if a person of ordinary skill in the art would

be unable to recognize the structure in the specification and associate it with the corresponding function in the claim, then the means-plus-function limitation is indefinite and thereby invalid. *Id*.

Like all matters of claim construction, construction of a means-plus-function claim limitation and the determination of definiteness of that claim construction are questions of law for the district court judge reviewed *de novo* on appeal, where the district court's determinations are based on evidence intrinsic to the patent. *Williamson*, 792 F.3d at 1346 (citing *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 840-41 (2015)). To the extent the district court, in construing the claims, makes underlying findings of fact based on extrinsic evidence, such as expert testimony, such findings of fact are reviewed on appeal for clear error. *Id.*; *see also Media Rights*, 800 F.3d at 1371.

The '221 Patent contains only one independent claim, Claim 1. In motion for summary judgment, Defendant argues that Claim 1 is invalid for being indefinite. Specifically, Defendant argues that three particular claim limitations in Claim 1 are means-plus-function claim limitations and that the specification of the '221 Patent does not disclose corresponding structure, material, or acts for performing the functions recited in those claim limitations.

Because the parties agree that the disputed claim limitations at issue are means-plus-function claim limitations, the Court will now preliminarily construe the disputed claim limitations and then determine if Claim 1 is invalid for being indefinite because the specification does not disclose sufficient corresponding structure, material, or acts for performing the functions recited in the claim limitations.

Construing a means-plus-function claim is a two-step process. First, the Court must identify the claimed function. Second, the Court must determine "whether the specification discloses

sufficient structure that corresponds to the claimed function." *Williamson*, 792 F.3d at 1351. "Where there are multiple claimed functions … the patentee must disclose adequate corresponding structure to perform all of the claimed functions." *Id.* at 1351-52.

Defendant points to three means-plus-function limitations as the basis for its motion:

- means to determine when the rate of deceleration exceeds a predetermined threshold level for a predetermined time interval;

- means to automatically activate the hazard warning lights when said rate of deceleration exceeds said predetermined threshold level for said predetermined time interval; … [and] …

- means to automatically deactivate the hazard warning lights when the rate of deceleration drops below the predetermined threshold level for a predetermined length of time and changes in acceleration of the vehicle indicate normal vehicle operation.

'221 Pat. col. 4:29-43.

In the first step of construing these three means-plus-function claim limitations, the Court must identify the function set forth in the means-plus-function claim limitations. The Court holds that Defendant has correctly identified the three functions recited in the three claim limitations in its brief in support of its motion for summary judgment, specifically:

- determin[ing] when the rate of deceleration exceeds a predetermined threshold level for a predetermined time interval;

- automatically activat[ing] the hazard lights when said rate of deceleration exceeds said predetermined threshold level for said predetermined time interval; … [and] …

- automatically deactivat[ing] the hazard warning light when the rate of deceleration drops below the predetermined threshold level for a predetermined length of time and changes in acceleration of the vehicle indicate normal vehicle operation.

11

(Def.'s brief at p. 9, Dkt. 29.)  In his response brief, Plaintiff does not dispute Defendant's identification of these functions.

In the second step of construing the disputed means-plus-function claim limitations, the Court must identify the corresponding structure, material, or acts for performing the functions identified in the claim limitations.  The parties agree that the '221 Patent teaches that the three claimed functions are performed in whole or part on a special purpose computer (i.e., microcontroller 22).

According to Federal Circuit case law, where the means-plus-function limitation is implemented on a special purpose computer (e.g., a general purpose computer programmed to perform particular functions pursuant to instructions from computer software), the patent must disclose an algorithm for performing the recited function to satisfy the definiteness requirement. *Williamson*, 792 F.3d at 1352; *Aristocrat Techs. Australia Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008).  The Federal Circuit has consistently required that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor to satisfy the definiteness requirement.  *Id*.  An algorithm is a set of instructions for how to perform the recited functions, but it is not as specific as computer source code. *See, e.g.*, *Triton Tech of Texas, LLC v. Nintendo of Am., Inc.*, 753 F.3d 1375, 1379 (Fed. Cir. 2014).  "[T]he algorithm may be expressed as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Williamson*, 792 F.3d at 1352.  As discussed above, where the specification of the patent does not disclose sufficient corresponding structure, material, for acts for a function recited in a means-plus-function claim limitation, that claim of the patent is invalid for being indefinite.  For computer software inventions, if the specification does not disclose an algorithm for performing a function recited in the means-plus-function

claim limitation, then that claim of the patent is invalid for being indefinite. *Id*. Therefore, in this case, to be valid, the '221 Patent must disclose an algorithm to carry out the claimed functions. *Id.* at 1351-52.

After considering the parties' arguments and the evidence, the Court holds that Defendant has not proven by clear and convincing evidence that any of the disputed claim limitations of Claim 1 are indefinite. When read in context of the entire patent, Claim 1 is very easy to understand and is not vague or overly broad. Rather, Claim 1 contains six clearly drafted means-plus-function claim limitations ending in an achieved result. These six means-plus-function claim limitations would likely themselves qualify as an algorithm if Claim 1 were written as a single broad means-plus-function claim limitation. *See* Kevin Emerson Collins, *Patent Law's Functionality Malfunction and the Problem of Overbroad, Functional Software Patents*, 90 Wash. U. L. Rev. 1399, 1464-1465 (2013).

While it is true that *Williamson* requires an algorithm when a means-plus-function limitation is implemented on a special purpose computer, "the algorithm may be expressed as a mathematical formula, in prose, or as a flow chart, *or in any other manner that provides sufficient structure*." *Williamson*, 792 F.3d at 1351-52 (emphasis added).

The written description of the '221 Patent discloses an algorithm or way for performing the functions set forth in Claim 1. Specifically, as discussed above, the '221 Patent discloses a digital accelerometer 20, describes how the digital accelerometer generates a pulse signal based on changes in acceleration, and identifies an exemplary digital accelerometer. '221 Patent, Col. 3, ll. 13-21. The '221 Patent also teaches that the microcontroller 22 generates a clock signal, the interrelation between the clock signal and the pulse signal generated by the digital accelerometer 20, and that the microcontroller 22 transmits an "on" or "off" signal to a latching

relay 18 based on the pulse signal as compared to a threshold, which causes the hazard lights of the automobile to turn on or off. *Id.* at col. 3, ll. 22-35. The '221 Patent does not disclose a specific example of what the threshold is; it states "[s]pecific thresholds of deceleration and activation are predetermined." *Id.* at col. 3, ll. 36-37.

As to the first disputed claimed function, "determin[ing] when the rate of deceleration exceeds a predetermined threshold level for a predetermined time interval," the Court finds that the specification of the '221 Patent discloses an algorithm or step-by-step process for performing this function. Specifically, the '221 Patent teaches the interaction between a digital accelerometer, a microcontroller 22, and a latching relay 18. The '221 patent teaches that a digital accelerometer generates digital pulses representative of the amount of acceleration or deceleration. '221 Pat. col. 3:22-30. Then the digital pulses from the digital accelerometer for a specific time period are compared to a "predetermined" threshold to determine whether an accumulated pulse count is "indicative of rapid deceleration resulting from hard or prolonged braking or sudden stoppage" of the vehicle. *Id.* at col. 3:31-37. Based on the above and other aspects of the '221 Patent, the Court holds that the specification discloses sufficient steps and structure for this first disputed function.

As for the second disputed claim function, "automatically activat[ing] the hazard lights when said rate of deceleration exceeds said predetermined threshold level for said predetermined time interval," the Court finds that the specification of the '221 Patent discloses an algorithm or step-by-step process for performing this function. The '221 Patent teaches that the microcontroller is programmed to transmit an "on" signal to the latching relay 18 when an accumulated pulse count indicative of rapid deceleration resulting from hard or prolonged braking or sudden stoppage is recognized. Id. at col. 3:31-35. When the latching relay 18

14

receives an "on" signal from the microcontroller, the latching relay closes, causing the voltage from the vehicle's electrical system to be supplied to the turn signal/hazard warning relay 24 which, in turn, activates the hazard warning lights. *Id*. at col 3:41-45. Based on the above and other aspects of the '221 Patent, the Court holds that the specification discloses sufficient steps and structure for performing the second disputed function.

As to the third disputed claim function, "automatically deactivat[ing] the hazard warning light when the rate of deceleration drops below the predetermined threshold level for a predetermined length of time and changes in acceleration of the vehicle indicate normal vehicle operation," the Court finds that the specification of the '221 Patent discloses an algorithm and structure for performing this function. This third claimed function is similar to the second claimed function. The specification, including the claim language itself, teaches comparing the current acceleration or deceleration to a predetermined threshold for a period of time. If the rate of deceleration drops below the threshold, then the '221 Patent teaches that the microcontroller can be programmed to send an "off" signal to the latching relay 18 and thereby cut the voltage to the vehicle's hazard lights. *Id*. at col. 3:36-40. Based on the above and other aspects of the '221 Patent, the Court holds that the specification discloses sufficient steps and structure for performing the third disputed function.

All three of the claim limitations which Defendant argues are indefinite involve comparing the acceleration/deceleration of the vehicle and a threshold value. Defendant appears to be reading an additional function into Claim 1 (i.e., determining a predetermined threshold) that simply is not there. The '221 Patent does not claim the function of determining a threshold value. To the contrary, the '221 Patent states that the thresholds are *predetermined*. As such, the '221 Patent does not need to disclose an algorithm for how to determine a threshold; rather, the

15

'221 patent must only disclose an algorithm and enable a person of ordinary skill in the art on how to "determine when the rate of acceleration exceeds a predetermined threshold level…" This is merely a comparison; not a determination of a threshold. As the Federal Circuit stated in *Williamson:* "the patentee must disclose adequate corresponding structure to perform *all the claimed functions*." *Williamson*, 792 F.3d at 1352 (emphasis added). Accordingly, the patentee is not required to disclose structure of unclaimed functions. Since the '221 Patent clearly avoids claiming what Defendant wishes to read into Claim 1, the '221 Patent does not need to describe an algorithm for the unclaimed function of determining a predetermined threshold.

Defendant also argues that a statement in the "Summary of the Invention" section of the '221 Patent is an admission that an algorithm is not disclosed, specifically: "The specific activation program will be determined through testing and evaluation and may be vehicle specific." '221 Patent col. 2, ll. 33-34. Defendant appears to suggest that the Plaintiff must disclose a working program including lines of software code for a means-plus-function claim limitation to be enabled. That simply is false. The Federal Circuit has held that the disclosure "need not be so particularized as to eliminate the need for any implementation choices by a skilled artisan," it is only required to sufficiently define the bounds of the claimed limitation. *Ibormeith IP, LLC v. Mercedes-Benz USA, LLC et al.,* 732 F.3d 1376, 1379 (Fed. Cir. 2013).

Defendant has failed to meet its burden of proving by clear and convincing evidence that Claim 1 is indefinite.

Because the Court has denied Defendant's motion for summary judgment, the Court denies as moot Plaintiff's motion to strike Defendant's summary judgment reply brief (Dkt. 35)

and Plaintiff's motion to stay this case pending a decision on Defendant's summary judgment motion (Dkt. 28).² The Court will not stay this case.

## V. CONCLUSION

For the reasons set forth above, the Defendant's Motion for Summary Judgment of Invalidity Due to Indefiniteness under 35 U.S.C. §112 ¶ 2 (Dkt. 29) is **DENIED**. The Court **DENIES** as moot Plaintiff's Motion to Stay Infringement Proceeding Pending Resolution of Counterclaims (Dkt. 28) and Plaintiff's Motion to Strike Claimant's Responsive Brief Filed with the Court (Dkt. 35). The parties shall work with the Court's Technical Advisor Christopher G. Darrow in proposing a schedule for the remaining part of this case.

**IT IS SO ORDERED.**


Dated: September 6, 2016                 s/ Sean F. Cox
                                         Sean F. Cox
                                         United States District Judge

I hereby certify that on September 6, 2016, the document above was served on counsel of record via electronic means and upon Paul Michelotti via First Class Mail at the address below:

Paul Michelotti
2850 Banyan Boulevard Circle
Boca Raton, FL 33431

                                         s/ Jennifer McCoy
                                         Case Manager

---

² In his motion to stay, Plaintiff requests to stay "the infringement proceeding . . . until the Court has reached a decision in regards to patent validity." (Mot. to stay at p. 1, Dkt. 28.) The Court interprets this motion to request that the case be stayed pending resolution of Defendant's summary judgment motion presently before the Court. To the extent that Plaintiff is seeking some other type of more stay, the motion is denied.